Arch C. BLOCHER, Jr., et ux., Appellants,

v.

D. E. McARTHUR, Appellee.

No. 10478.

Court of Civil Appeals of Texas.

Austin.

May 1, 1957.

Rehearing Denied May 29, 1957.

L. Tonnett Byrd, Austin, for appellant.

Hollers & O'Quinn, Austin, for appellee.

GRAY, Justice.

Appellants, Arch C. Blocher and his wife, Mildred, sued to recover damages caused to their apartment by the diversion of surface waters. They alleged that their damage was caused by: (1) the diversion of surface waters; (2) the negligent construction of a retaining wall, and (3) the maintenance of a private nuisance.

The suit was filed against D. E. McArthur who died. Mozelle McArthur, Execu-

trix of his Estate, was substituted as defendant and she is appellee.

Appellee has filed a plea to the jurisdiction of this Court wherein it is alleged that an appeal bond was not timely filed. The trial court rendered judgment on July 25, 1956, and on August 1, 1956, appellants filed their original motion for new trial. This motion was not amended and it was not presented to the trial court within 30 days after it was filed nor was there any agreement with reference thereto. Notice of appeal was filed September 21, 1956, and an appeal bond was filed October 9, 1956.

It is appellee's contention that the motion for new trial was overruled by operation of law 30 days after it was filed and that therefore the appeal bond was not timely filed.

Subdivision 4 of Rule 329–b, Texas Rules of Civil Procedure, in part provides:

"* * * In the event an original motion or amended motion for new trial be not presented within thirty (30) days after the date of the filing thereof, and the district judge in his discretion refuses to consider the same or refuses to hear evidence relating thereto, such motion will be overruled by operation of law forty-five (45) days after the same is filed, unless disposed of by an order rendered before said date."

■ The use of the conjunction "and" between the first and second clauses of the above quoted portion of the rule presents some difficulty. If the strict meaning of the word "and" is applied then two requirements are set out: (1) if the motion for new trial is not presented within 30 days after it is filed, *and* (2) if the district judge refuses to consider the motion or refuses to hear evidence relating thereto then such motion is overruled by operation of law 45 days after it is filed. This would require that a thing not be done (motion be not presented) and also that the district judge either refuse to consider the motion

(not presented) or refuse to hear evidence relating to said not presented motion. It does not appear to us that there could be any occasion for the district judge to refuse to consider or to hear evidence if the motion was never presented. Moreover such construction would render a showing of compliance with the rule very difficult if not impossible. It is our opinion that the rule is not to be so construed but that its meaning is that requirements (1) and (2) are to be separate and distinct; that the strict meaning of the word "and" is not to be followed but the disjunctive "or" is to be substituted. This we deem to be its proper construction. 50 Am.Jur., Sec. 281, p. 267. Crawford, Statutory Construction, Sec. 188, p. 322.

In Thorp v. Thorp, Tex.Civ.App., 294 S.W.2d 724, no writ history, this Court considered a question similar to that here presented. We there held that under Rule 329–b (effective January 1, 1955) a motion for new trial filed February 27, 1956, not presented to or acted upon by the trial court and no agreement with reference thereto was made, was overruled by operation of law 45 days after it was filed. We adhere to that holding and further call attention to the provisions of the rule that make the holding applicable to original and amended motions alike.

■ Appellants' motion for new trial was overruled by operation of law 45 days after August 1, 1956, or on September 15, 1956, and the appeal bond was filed within 30 days of that date. Rule 356, Texas Rules of Civil Procedure. Appellee's plea to the jurisdiction is overruled.

On or about April 1, 1947, appellants' entered into a lease agreement with the owners of a tract of land located at 2314 Swisher Street in the City of Austin whereby appellants agreed to construct at their own cost a basement apartment under the improvements then on the land. In return appellants were to have the use and benefits of the apartment for a period of five years from April 1, 1947. Excavations were made under the improvements on the

land, the apartment was constructed and on or about June 1, 1947, appellants moved into the apartment and occupied it as their home until they were compelled to move because of water damage.

At the time of the lease agreement and the construction of the apartment the lots to the north of 2314 Swisher Street were vacant property with the natural drainage of water therefrom south. At these times the water drained across the 2314 Swisher Street property east of the apartment and likewise east of the improvements then on the land and without damage or inconvenience to appellants.

D. E. McArthur was the owner of the lot immediately north of appellants' apartment and during the months of December, 1948 and January, 1949, he filled in his lot and thereby raised its ground level. This fill consisted of concrete and caliche chunks covered with top soil. He also built a retaining wall along the south line of his lot. This wall however was not as high as the raised ground level of the lot and its base was about eighteen inches below the original ground level. About the last of February, 1949, during a rain, water flowed from the McArthur property, concentrated at the northeast window of the apartment, flowed over the window sill, which was seven inches above the ground level, ran into the apartment and caused damage. Appellants complained to McArthur about the water and suggested that the height of the retaining wall be raised. During the rain appellants dug a ditch about eight or ten inches deep and 20 or 22 inches wide in an effort to drain the water away from the window. About the middle of the following March it rained and again the water flowed from McArthur's lot, concentrated at the northeast corner of the apartment, flowed over the window sill into the apartment and caused further damage. Thereafter the height of the retaining wall was increased ten inches but it was still lower than the then ground level of the lot. Thereafter in April it rained and again the water flowed

into the apartment in the same manner as it had previously done. Thereafter and in the month of April, 1949, the height of the retaining wall was again raised and thereafter water did not flow into the apartment however during the summer of 1949, water began to seep in around the joint of the floor and the north wall. This caused further damage and finally compelled appellants to move from the apartment.

There was a distance of about five feet from the north wall of the apartment to the south line of the McArthur property. The apartment was about 30 feet long, 15 feet wide and had four rooms and a bath. It was constructed under a house then on the land. An excavation was made through caliche, "kinda gravel" and on down to rock. The walls of the apartment were concrete to a height of about three feet with wooden walls above the concrete. The floors were also concrete.

Twenty nine special issues were submitted to the jury. By answers to these issues the jury found that: (1) D. E. McArthur diverted the natural flow of the surface water from his property onto that of appellants by building up the ground level of his property and building the retaining wall; (2) such diversion of surface waters was a proximate cause of appellants' damage; (3) D. E. McArthur failed to provide reasonable drainage for his retaining wall; (4) such failure was negligence; (5) such negligence was a proximate cause of appellants' damage; (6) as a direct and proximate result of the diversion of surface waters appellants lost the use and enjoyment of their apartment; (7) as of April 1, 1952, appellants had sustained a loss of $750 proximately caused by diverted surface water; (8) as of February 28, 1950, appellants had sustained a loss of $409 to their household goods and furniture as a direct and proximate result of diverted surface water; (9) the retaining wall was a nuisance to appellants; (10) such nuisance was a proximate cause of appellants' damage; (11) appellants suffered discomfort, inconvenience and an-

noyance as a direct and proximate result of the diverted surface water; (12) $150 would reasonably compensate Mr. Blocher for such discomfort, inconvenience or annoyance and $350 would so compensate Mrs. Blocher; (13) the use made of the retaining wall by D. E. McArthur was reasonable; (14) the customary methods and practices to prevent the inflow of surface water were used in the construction of the northeast window of the apartment; (15) and (16) as submitted were conditional and were not answered; (17) appellants could have lessened their damage from surface water by the use of ordinary care and the expenditure of a small amount of money in constructing a concrete trench between the retaining wall and the apartment; (18) the reasonable cost of such trench would have been $40; (19) in the construction of the apartment appellants failed to provide for adequate drainage of surface water flowing against the apartment; (20) such failure was negligence; (21) such negligence was a proximate cause of appellants' damage; (22) appellants failed to provide for adequate drainage to prevent subsurface water seeping into the apartment; (23) such failure was negligence; (24) such negligence was a proximate cause of appellants' damage; (25) appellants failed to construct their apartment in a good and workmanlike manner to prevent the flow of surface water or the seepage of water into the same; (26) such failure was negligence; (27) such negligence was a proximate cause of the damage; (28) after appellants discovered that surface water flowed or seeped into their apartment they failed to exercise ordinary care to prevent further damage, and (29) such failure was a proximate cause of the damages suffered by appellants.

Appellants and appellee filed motions for judgment on the jury's verdict. Appellants' motion was overruled, appellee's motion was granted and judgment denying appellants any recovery was rendered.

In his judgment the trial court found that after the retaining wall was constructed its height was raised at the request of appellants and that they are estopped to complain of any injury caused by the raising of the height of said wall or the use and maintenance thereof after its height was increased.

As applicable here the provisions of Art. 7589a, Vernon's Ann.Civ.St., are:

> "It shall hereafter be unlawful for any person, firm or private corporation to divert the natural flow of the surface waters in this State or to permit a diversion thereof caused by him to continue after the passage of this Act or to impound such waters, or to permit the impounding thereof caused by him to continue after the passage of this Act in such manner as to damage the property of another, by the overflow of such water so diverted or impounded, and that in all such cases the injured party shall have remedies, both at law and in equity, including damages occasioned thereby; * * *."

The jury findings 1–12 both inclusive but excluding finding 8 are findings supporting appellants' alleged cause of action. By finding 7 the jury found appellants sustained damages which were before the height of the retaining wall was first increased.

■ Turner v. Big Lake Oil Co., 128 Tex. 155, 96 S.W.2d 221, 227, is authority for the following statements applicable to the above findings. (1) If D. E. McArthur had not raised the ground level of his land and had not constructed the retaining wall and had diverted surface waters onto the land of appellants to their damage they would have had a cause of action without the necessity of alleging negligence. The diversion of such water and throwing it on appellants' land to their damage was an invasion of their rights just as if their "property had been bodily

taken. Bunch v. Thomas, 121 Tex. 225, 229, 49 S.W.2d 421. 27 Ruling Case Law, p. 1151, § 79." (2) The raising of the ground level and the construction of the retaining wall were mere instrumentalities by which the diverted surface water was concentrated and rendered more destructive. And (3) D. E. McArthur having created a nuisance which was a proximate cause of appellants' damages, he had, "in violation of the Constitution, substantially taken a portion of [appellants'] property; and, of course, in such a case proof of negligence was not necessary."

■ Findings 1–12 supra cannot be and are not destroyed by finding 13 that the use made of the retaining wall by D. E. McArthur was reasonable. It is not disputed that the retaining wall was an instrumentality causing the diversion of surface water, or that such water flowed into appellants' apartment and caused damage. Art. 7589a is effective to prevent such diversion of surface waters and thereby caused damage. Miller v. Letzerich, 121 Tex. 248, 49 S.W.2d 404, 414, 85 A.L.R. 451. Such diversion of surface waters and the resulting damages are established by the undisputed evidence and the only legal application that can be applied to finding 13 of a reasonable use of the retaining wall (which term was not defined by the trial court) is that the wall may be used for lawful purposes. See Miller v. Letzerich, supra, 49 S.W.2d at page 413, col. 2.

■ Finding 14 was that customary methods and practices were used in the construction of the northeast window of the apartment. The evidence shows without dispute that it was through this window (over its sill) that the water flowed into the apartment and caused all damage prior to the summer of 1949. Then finding 25 (that appellants failed to construct the apartment in a good and workmanlike manner to prevent the flow of surface water or seepage of water into the apartment) conflicts with finding 14 or it must be limited to seepage (later noticed). We think it must be so limited because the apartment was constructed prior to the construction of the retaining wall and the raising of the ground level of the McArthur property and at a time when the surface water flowed in a diffused state east of the apartment and not under the house below which the apartment was constructed. Appellants then in the construction of the apartment were governed by the conditions as they then existed and not in anticipation of an unlawful act on the part of the adjoining landowner.

The statement is also applicable to finding 22. Water did not seep into the apartment until the summer of 1949—after the retaining wall was built and after its height was increased. There was no express finding as to the actual cause of water seeping into the apartment, however in oral argument before us appellee's counsel frankly admitted that the wall retarded the flow of surface water, and the case has been presented as though the increased height of the wall caused or contributed to cause water to seep into the apartment. If water seeped into the apartment as a result of its unlawful diversion or as a result of the retaining wall, which the jury found was not provided with reasonable drainage (finding 3), then the manner of the construction of the apartment (constructed prior to the wall) would not be a defense. 1 Am.Jur., Sec. 8, at p. 509.

■■ Findings 17 and 18 are that appellants could have lessened their damage from surface water by the use of ordinary care and the expenditure of $40 in constructing a concrete trench between the retaining wall and the apartment. These findings are not sufficient to defeat appellants' right of recovery to some extent because: there is no finding that such drainage ditch would have so diverted the accumulated surface waters as not to injure adjoining land in violation of Art. 7589a supra and there is no finding of how much, if any, appellants' damage was enhanced by their failure to use ordinary care. Then such defensive findings are incomplete. In Morgan v. Young, Tex.Civ.App., 203 S.W.2d 837, at page 849, Er.Ref., n.r.e., the court quoted

from Belcher v. Missouri K. & T. Ry. Co., 92 Tex. 593, 50 S.W. 559, as follows:

" 'What part of the damages the plaintiff should recover in such case must be determined by the jury from the facts. If the plaintiff showed negligence on the part of the defendant, he was prima facie entitled to recover all of the damages sustained, and the burden of proof rested upon the defendant to prove the negligence by which plaintiff enhanced the amount of the damage or failed to prevent the injury, as well as the extent to which such damages were enhanced, or to which they might have been lessened by the use of ordinary care on the part of the plaintiff.' To same effect Osage Oil & Refining Co. v. Lee Farm Oil Co., Tex. Civ.App., 230 S.W. 518."

This rule is supported by the following authorities: Coleman v. Wright, Tex.Civ. App., 155 S.W.2d 382, no writ history; Shellhammer v. Caruthers, Tex.Civ.App., 99 S.W.2d 1054. Er. dis.; Jones v. Rainey, Tex.Civ.App., 168 S.W.2d 507. Er. ref. (all water cases); 13 Tex.Jur., "Duty to Prevent or Minimize Damages" Sec. 18, p. 102.

What we have just said is also applicable to findings 28 and 29.

What we have said as to finding 25 supra is likewise applicable to finding 19.

Findings 9 and 10 are that the retaining wall was a nuisance to appellants and a proximate cause of their damage. The trial court's finding that appellants are estopped to recover damages caused by the height of the retaining wall being increased is founded on the fact that such increase in height was at their request and independent of the findings 3, 4, and 5 (failure to provide reasonable drainage for the wall, negligence and proximate cause of damages). At the time the request was made the surface water was overflowing into the apartment and there was no seepage. We therefore think the request must have had reference to the existing conditions, that is that it was made to prevent overflow. The increased height of the wall did prevent water from overflowing into the apartment. There was no finding by the trial court nor by the jury that it was or could have been reasonably anticipated by appellants that the increased height of the wall could cause water to seep into the apartment. Such knowledge is an essential element of estoppel. Vann v. Bowie Sewerage Co., 127 Tex. 97, 90 S.W.2d 561. 17 Tex.Jur., p. 138, sec. 10. The principles applicable to the facts here are stated in 39 Am.Jur., Sec. 198, p. 473.

From what we have said it is clear that the trial court's judgment cannot be sustained, it is also clear that the fact findings are sufficient to justify the rendition of a judgment for a stated amount and for which reasons the judgment of the trial court is reversed and judgment is here rendered that appellants recover of appellee $1150 (findings 7 and 12) together with interest thereon from July 25, 1956, at the rate of 6 per cent per annum and costs.

On Appellants' Motion for Rehearing

In our original opinion we rendered judgment for appellants for the amounts found by the jury in answer to issues 7 and 12 as set out in the trial court's judgment. Appellants assert there is error in our judgment and have filed their motion for leave to file a supplemental transcript showing the jury's answer to issue 12. We granted this motion and the supplemental transcript has been filed. It shows that in answer to issue 12 the jury found that $350 would reasonably compensate Mrs. Blocher for discomfort, inconvenience or annoyance caused her by diverted surface water and that $150 would so compensate Mr. Blocher.

It now appears that our judgment heretofore rendered is incorrect and that it should have been that appellants recover of appellee $1,250 instead of $1,150. The amount of the judgment is accordingly corrected and judgment is now rendered that appellants recover of appellee $1,250 together with interest thereon from July 25, 1956, and costs.

To such extent appellants' motion for rehearing is granted. In all other respects it is overruled.